## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EDWARD G. HORVATH,

    Plaintiff

    v.

GENE DODARO, *et al.*,

    Defendants

Civil Action No. 15-210 (CKK)

### MEMORANDUM OPINION
(November 24, 2015)

On June 23, 2004, Plaintiff Edward Horvath married his then-partner Richard Neidich in

Massachusetts after marriage between two people of the same gender, or sex, became legal in the

Commonwealth of Massachusetts. *See Goodridge v. Dep't of Public Health*, 798 N.E.2d 941,

969 (Mass. 2003). Soon thereafter, Plaintiff, who was at that time an employee of the

Government Accountability Office ("GAO")—now a GAO retiree—sought unsuccessfully to

add his husband to his employer-sponsored health insurance plan. The GAO refused his request

in light of the Defense of Marriage Act ("DOMA"), which defined marriage as a union between

a man and a woman. Almost ten years later, on June 26, 2013, the Supreme Court of the United

States held the Defense of Marriage Act unconstitutional in *United States v. Windsor*, 133 S. Ct.

2675 (2013). In the aftermath of the Supreme Court's decision in *Windsor*, Plaintiff successfully

added his husband to his GAO health insurance policy. Plaintiff also sought compensation for the

GAO's prior refusal to add his husband to his policy. After the GAO refused to provide backpay

or other remedies with respect to its prior refusal to add Plaintiff's husband to his health

insurance coverage, Plaintiff, proceeding *pro se*, brought this action seeking financial

compensation (including backpay and interest) and punitive damages, as well as attorney's fees

and costs. Presently before this Court is Defendants' [10] Motion to Dismiss Pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6). The question before the Court is not whether Plaintiff was harmed

by the GAO's refusal to add Plaintiff's husband to his health insurance coverage; the question for the Court, rather, is whether Plaintiff can pursue the remedies that he seeks, after the fact, in this action. The Court concludes that he cannot. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Defendants' motion, for the reasons stated below. The Court dismisses this case in its entirety.

## I. BACKGROUND

The Court considers the facts as alleged in both the Amended Complaint and Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss—as the Court must in a case filed by a plaintiff proceeding *pro se*. *See Brown v. Whole Foods*, 789 F.3d 146, 152 (D.C. Cir. 2015) (holding that district court must consider facts alleged in all of *pro se* plaintiff's pleadings, including an opposition to a motion to dismiss, in resolving a motion to dismiss). However, the Court does "not accept as true … the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

---

[1] The Court's consideration has focused on the following documents:

- Plaintiff's Amended Complaint ("Compl."), ECF No. 6;
- Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Defs.' Mot."), ECF No. 10;
- Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 12; and
- Defendants' Reply Brief in Support of their Motion to Dismiss ("Defs.' Reply"), ECF No. 13.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

**A.  Statutory and Regulatory Framework**

The Court first describes the statutory and regulatory framework for the administration of federal health benefits, including disputes pertaining to such benefits, and then describes the statutory and regulatory scheme for resolving claims of discrimination against the GAO.

"The Federal Employee Health Benefits Act [the 'Act'] establishes a subsidized health insurance program for civilian employees and annuitants of the federal government." *Mut. of Omaha Ins. Co. v. Nat'l Ass'n of Gov't Employees, Inc.*, 145 F.3d 389, 390 (D.C. Cir. 1998). "Under the Act, the Office of Personnel Management ['OPM'] is given broad authority to administer the Federal Employees Health Benefits Program." *Bolden v. Blue Cross Blue Shield*, 848 F.2d 201, 203 (D.C. Cir. 1988); *see also* 5 U.S.C. § 8913 ("The regulations of the Office may prescribe the time at which and the manner and conditions under which an employee is eligible to enroll in an approved health benefits plan"). Utilizing its rulemaking authority, OPM created a remedial scheme for the resolution of enrollment disputes. An initial decision regarding enrollment is rendered by "an employing office" when issued "in writing and stating the right to an independent level of review (reconsideration) by the agency or retirement system." 5 C.F.R. § 890.104(b). An employee may seek reconsideration within 30 days of the initial decision. *Id.* § 890.104(d). Upon a request for reconsideration, an agency must conduct "an independent review designated at or above the level at which the initial decision was rendered." *Id.* § 890.104(c)(2). "After reconsideration, the agency or retirement system must issue a final decision, which must be in writing and must fully set forth the findings and conclusions." *Id.* § 890.104(e). "The district courts of the United States have original jurisdiction, concurrent with

the United States Court of Federal Claims, of a civil action or claim against the United States founded" on the Act.[2] 5 U.S.C. § 8912.

The Court now turns to the framework for discrimination claims against the GAO. "GAO is a legislative branch agency for which the United States Congress has created a personnel system separate from the system of the executive branch." *Chennareddy v. Bowsher*, 935 F.2d 315, 319 (D.C. Cir. 1991) (citing 31 U.S.C. § 731 *et seq.*). "GAO employees, however, have the same rights and remedies under laws prohibiting discrimination in employment in the federal government as do employees of the executive branch." *Id.* Therefore, pursuant to Title VII of the Civil Rights Act of 1964, the GAO may not "fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(b); *see also* 31 U.S.C. § 732 ("This subchapter and subchapter IV of this chapter do not affect a right or remedy of an officer, employee, or applicant for employment under a law prohibiting discrimination in employment in the Government on the basis of race, color, religion, age, sex, national origin, political affiliation, marital status, or handicapping condition."). "Before filing suit, a federal employee who believes that her agency has discriminated against her in violation of Title VII must first seek administrative adjudication of her claim." *Payne v. Salazar*, 619 F.3d 56, 58 (D.C. Cir. 2010). "Congress directed that the [Personnel Appeals Board] have the same authority over equal employment opportunity and discrimination matters at GAO as its counterpart agencies, *e.g.,* the EEOC, the Merit Systems Protection Board ('MSPB'), and the Federal Labor Relations Authority ('FLRA'), have over

---

[2] OPM regulations explicitly provide for three forms of judicial review: a suit to compel enrollment, *see* 5 C.F.R. § 890.107(a); review of the legality of OPM regulations, *see id.* § 890.107(b); and review of denial of specific FEHB claims, *see id.* § 890.107(c).

such matters in the executive branch." *Chennareddy*, 935 F.2d at 319 (citing 31 U.S.C. § 732(f)(2)(A)) (additional citations omitted).

A GAO employee may file a discrimination claim either in Federal district court or with the Personnel Appeals Board ("PAB"). However, before filing such a claim, an employee must first exhaust administrative remedies. *See Payne*, 619 F.3d at 58. Pursuant to GAO regulations, an employee must first contact an equal employment opportunity counselor at GAO's Office of Opportunity and Inclusiveness and must do so within 45 days of the allegedly discriminatory action. *See Chennareddy v. Dodaro*, 698 F. Supp. 2d 1, 11 (D.D.C. 2009) *aff'd in part sub nom. Davis v. Dodaro*, No. 10-5044, 2010 WL 3199827 (D.C. Cir. Aug. 10, 2010) (citing GAO Order 2713.2). If informal counseling does not resolve the issue, the employee may file a formal discrimination complaint with the Office of Opportunity and Inclusiveness. *See* 71 Fed. Reg. 65,525, 65,525 (Nov. 8, 2006). Upon the issuance of a final decision by the GAO, an employee may file a civil action in district court within 90 days or may file a charge with the PAB within 30 days. *See* 42 U.S.C. § 2000e-16(c) (establishing deadline for civil action under Title VII); 31 U.S.C. § 732(f)(2) (applying Title VII provisions to GAO employees); 4 C.F.R. § 28.98 (deadline for filing PAB charge); *see also* GAO Order 2713.2 at ch. 6, ¶ 2 (setting out appeal rights for GAO employees).[3] Decisions of the PAB are appealable to the United States Court of Appeals for the Federal Circuit. *See* 31 U.S.C. § 755; 4 C.F.R. § 28.90.

## B.  Factual Background

Plaintiff Edward Horvath, a man, married his longtime partner Richard Neidich, also a man, on June 25, 2004, in Massachusetts, Compl. ¶¶ 10, 14, approximately one month after it

---

[3] An employee may also file a civil action within 180 days of filing a complaint with the agency if the agency has not resolved the complaint by that time. *See* GAO Order 2713.2, ch. 6 ¶ 2.

became legal for two men to marry each other in the Commonwealth of Massachusetts, *see id.*

¶ 13.[4] At that time—and until Plaintiff's retirement in January 2014—Plaintiff was a full-time

employee of GAO. *Id.* ¶ 15. Prior to Plaintiff's marriage to Neidich, Plaintiff elected medical

coverage for "Self-Only" through the Federal Employee Health Benefit ("FEHB") program

provided by his employer, GAO, Compl. ¶ 20, which is a "legislative branch agency" of the

Federal government, *Chennareddy v. Bowsher*, 935 F.2d at 319. After his marriage in

Massachusetts, Plaintiff sought—ultimately unsuccessfully—to change his FEHB election.

Specifically, within 60 days of his marriage, Plaintiff submitted a Health Benefits Election Form

(SF 2809), seeking to change his health benefit election to "Self and Family." Compl. ¶¶ 21-22.

As proof of his marriage, he provided a copy of the marriage certificate issued and recorded by

the Commonwealth of Massachusetts. *Id.* ¶ 23. By letter dated September 27, 2004, Plaintiff

communicated to Carolyn Mitchell, a senior GAO benefits specialist, that his online personnel

data report did not reflect "Self and Family" insurance coverage and that his pay and earnings

statements had not reflected a change to his coverage. *Id.* ¶ 25. In the same letter, Plaintiff asked

that GAO inform him if it had made a determination denying him the benefit change and asked

for a "specific justification or rationale" for such any such determination. *Id.*

In response to Plaintiff's request, Jesse Hoskins, GAO's Chief Human Capital Officer,

issued a letter dated October 26, 2004, which stated that Plaintiff's SF 2809 request to change his

health benefits to cover Neidich could not be processed in light of the eligibility requirements set

---

[4] On November 18, 2003, the Massachusetts Supreme Judicial Court (the highest court of the Commonwealth of Massachusetts) held that limiting civil marriage to opposite sex couples violated the Massachusetts Constitution. *See Goodridge*, 798 N.E.2d at 969. The court stayed its judgment for 180 days "to permit the Legislature to take such action as it may deem appropriate in light of this opinion." *Id.* at 970. Therefore, Plaintiff and his now-husband—two men— became legally able to marry each other in Massachusetts on May 17, 2004. They did so shortly thereafter. Comp. ¶ 14.

by OPM. Compl. ¶ 26. Specifically, the letter relied on the OPM regulation limiting health benefits to the employee or eligible family members. *Id.* (citing 5 C.F.R. § 890.302). Pursuant to Federal law, a family member includes a spouse. *Id.* (citing 5 U.S.C. § 8901(5)). Hoskins then referred to the Defense of Marriage Act, which defined spouse in any Federal statute, regulation, or agency interpretation as referring only to a person of the opposite sex who is a husband or a wife.[5] *Id.* Therefore, Hoskins stated that the request to provide Neidich with health insurance benefits could not be processed. *Id.* On November 24, 2004, Plaintiff requested reconsideration of the decision in an eight-page letter sent to Sallyanne Harper, Chief Administrative Office of the GAO. *Id.* ¶ 28. Plaintiff's request for reconsideration set out the particular circumstances of Plaintiff and his husband, as well as his claim that in other circumstances "actual administrative practice was less rigorous and selectively applied as management practices sometimes contrary to the letter of regulations and law." *Id.* Plaintiff suggests that, in refusing to apply the same flexibility to his circumstances, GAO was acting in a discriminatory fashion. *Id.* On January 11, 2005, Harper issued a letter denying Plaintiff's request for reconsideration. *Id.* ¶ 30. Harper stated that Hoskins' decision—the denial of benefits—was in accordance with the applicable laws and regulations, as cited by Hoskins. *Id.* Harper's brief letter did not otherwise address the substance of the materials submitted in Plaintiff's request for reconsideration, including his suggestion that the denial of benefits was discriminatory. *Id.* The letter stated that it constituted a

---

[5] At the time, Section 3 of the Defense of Marriage Act, provided as follows: " 'In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife.' " *United States v. Windsor*, 133 S. Ct. at 2683 (quoting 1 U.S.C. § 7).

final agency decision under 5 C.F.R. § 890.104(e), which governs the FEHB program. *Id.* Plaintiff did not seek judicial review of the decision denying him benefits. *See generally* Compl.

However, in light of the denial of benefits by the GAO, Plaintiff proceeded to pursue a discrimination complaint, through both the GAO's Office of Opportunity and Inclusiveness and the GAO's Personnel Appeals Board ("PAB"). Compl. ¶¶ 34, 37. In accordance with the process for filing a complaint through the GAO's Office of Opportunity and Inclusiveness, Plaintiff initiated discussions with an equal opportunity specialist in the Office of Opportunity and Inclusiveness. *Id.* In light of those discussions, he was issued a Notice of Right to File a Formal Discrimination Complaint on February 22, 2005. *Id.* Several weeks later, on March 11, 2005, Plaintiff filed an Individual Complaint of Discrimination with the Office of Opportunity and Inclusiveness, alleging discrimination based on sex and age and claiming that he had been denied equal access to benefits available to other GAO employees. *Id.* ¶ 39. Through that complaint, he sought both a change in enrollment status and damages. *Id.* ¶ 41. On September 13, 2006, the GAO denied his Complaint, concluding that there was insufficient evidence to conclude that Plaintiff had been discriminated against and explaining that the Defense of Marriage Act prohibited the GAO from extending health insurance benefits to Plaintiff's husband. *Id.* ¶ 45. Plaintiff initially decided to appeal the decision to the PAB and filed a charge with the PAB Office of General Counsel ("PAB-OGC") on October 16, 2006. *Id.* ¶ 47. However, Plaintiff chose not to pursue that appeal further and to "suspend his pursuit of FEHB enrollment of his spouse." *Id.* Plaintiff also did not seek review of the GAO's denial of his discrimination complaint in Federal district court at that time.

Meanwhile, concurrently with the above proceedings, Plaintiff began to pursue an alternative avenue of addressing his discrimination claim: on February 11, 2005, he filed a

charge with the PAB-OGC, alleging that the GAO committed prohibited personnel practices by denying Plaintiff's request to add his husband to his health insurance plan. *Id.* ¶ 37. Through this charge, Plaintiff also claimed that the agency had violated his Constitutional rights in refusing to enroll Neidich in the health insurance plan. *Id.* The PAB-OGC initiated an investigation in response and concluded that the PAB lacked the authority to address the Constitutional issues presented in Plaintiff's charges. *Id.* In light of the PAB-OGC's conclusions, Plaintiff did not file a formal petition with the PAB itself based on these charges. *Id.*

Fast forward seven years. On June 26, 2013, in *United States v. Windsor*, the United States Supreme Court held the Defense of Marriage Act to be unconstitutional. 133 S. Ct. at 2682. Two days later, on June 28, 2013, Plaintiff enrolled his husband in his FEHB plan. Compl. ¶ 50. Plaintiff's "Self plus Family" coverage, covering Neidich, began on June 30, 2013. *Id.* ¶ 52. Seeking retroactive compensation for the years in which he was not permitted to receive insurance coverage for Neidich through FEHB, Plaintiff initiated counseling and discussions with an equal opportunity specialist in the GAO's Office of Opportunity and Inclusiveness regarding a potential informal resolution of the discrimination complaint Plaintiff filed in 2005. *Id.* ¶¶ 69, 71. The matter was not resolved informally, and Plaintiff received a Notice of Right to File Complaint of Discrimination on December 19, 2013. *Id.* ¶ 70. On January 2, 2014—the day before Plaintiff retired from the GAO—Plaintiff filed a Complaint of Discrimination with the GAO's Office of Opportunity and Inclusiveness, claiming discrimination on the basis of sex for the denial of FEHB coverage for his husband prior to 2013. *Id.* ¶ 71. Through this complaint, Plaintiff sought retroactive compensation for the years in which he had been denied "Self Plus Family" FEHB coverage. *Id.* Plaintiff was not contacted by any member of the Office of Opportunity and Inclusiveness staff or any outside investigator during the months the complaint

was pending. *Id.* ¶ 75. On November 14, 2014, Reginald Jones, managing director of the Office

of Opportunity and Inclusiveness, issued a one-page letter dismissing Plaintiff's complaint for

failure to state a claim. *Id.* ¶ 73; *see also id.*, Exhibit (Letter from Reginal Jones). Jones'

reasoning explaining the dismissal for failure to state a claim was, in its entirety, as follows:

> On June 26, 2013, Section 3 of the Defense Marriage Act (DOMA) was ruled
> unconstitutional and per the Office of Personnel Management's (OPM), July 17,
> 2013, Benefits Administration Letter Number 13-203, OPM retroactively
> provided new guidance to this rule for the federal benefits' program
> administration. Because existing same-sex marriages were not recognized by the
> federal government before the Supreme Court decision, all legal same-sex
> marriages that predated the decision were treated as new marriages and enrollees
> had 60 days from June 26, 2013 to apply for benefits. The rule did not approve
> benefits prior to the June 26th date. You enrolled for FEHB benefits within the
> applicable time frame for same-sex marriages and were not denied coverage for
> your spouse.

*Id.* Plaintiff then filed this action, seeking retroactive compensation for the benefits that had been

denied, compensation for mental anguish, punitive damages, and attorney's fees and costs, and

Defendants move to dismiss the amended complaint in this action.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases

entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co.*

*of Am.*, 511 U.S. 375, 377 (1994). The Court begins with the presumption that it does not have

subject matter jurisdiction over a case. *Id.* To survive a motion to dismiss pursuant to Rule

12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction

over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In

determining whether there is jurisdiction, the Court may "consider the complaint supplemented

by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts

plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333

F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (citations omitted).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall Cnty. HealthCare Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). In considering a motion to dismiss a complaint brought by a *pro se* plaintiff, a court must also consider materials presented in such a plaintiff's opposition to the motion to dismiss. *Whole Foods*, 789 F.3d at 152.

### III. DISCUSSION

Plaintiff has not explicitly identified the legal basis for his claims in this case. In moving to dismiss the Amended Complaint, Defendants address the several sources of the law that may be the basis for Plaintiff's claims. Defendants argue that each fails for want of subject matter jurisdiction or for failure to state a claim. Plaintiff has not identified any alternative legal basis for his claims. The Court addresses, in turn, the potential legal bases for Plaintiff's claims identified by Defendants and ultimately concludes that none of the bases support Plaintiff's claims as presented in this action. The Court, therefore, dismisses the Amended Complaint in its entirety.

### A.  Federal Employee Health Benefits Act

Defendants argue that any claim under the Federal Employee Health Benefits Act is barred by the statute of limitations.[6] In response, Plaintiff argues that his claim is not time-barred because the statute of limitations was tolled until the decision of the Supreme Court in *United States v. Windsor* in 2013 and because his injury continued during those years. Because the Court agrees with Defendants that Plaintiff's claim under the Federal Employee Health Benefits Act is barred by the statute of limitations, the Court need not reach Defendants' alternative argument that money damages are not available under the Act.[7]

---

[6] While Defendants suggest that the remedies under the Federal Employee Health Benefits Act are exclusive, *see* Def.'s Mot. at 10, the Court does not understand Defendants to argue that this exclusive scheme bars discrimination claims under Title VII or otherwise.

[7] The Court notes, however, that insofar as Plaintiff seeks injunctive relief—regardless of the legal basis for that claim—such a request would be moot because Plaintiff's husband has been added to his health coverage since 2013. Compl. ¶¶ 50, 52.

Pursuant to 28 U.S.C. § 2401(a) and subject to exceptions not relevant here, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrued."[8] 28 U.S.C. § 2401(a). The statute of limitations in section 2401(a) is applicable absent a more specific applicable statute of limitations. *See Howard v. Pritzker*, 775 F.3d 430, 441 (D.C. Cir. 2015). Section 2401(a) is applicable to claims under the Federal Employee Health Benefits Act. *See Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004) (section 2401(a) applicable to claims under the Administrative Procedure Act); *Bolden*, 848 F.2d at 203 (applying Administrative Procedure Act standard of review to claim under the Federal Employee Health Benefits Act).

"Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed."[9] *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987); *see also Muwekma Ohlone Tribe v. Salazar,* 708 F.3d 209, 218 (D.C. Cir. 2013) ("The court lacks subject matter jurisdiction to hear a claim barred by section 2401(a)."). Because this statute of limitations is jurisdictional,

---

[8] Plaintiff also names as defendants federal officials in their official capacities, but "a suit against a federal official acting in an official capacity is a suit against the United States." *Howard v. Pritzker*, 775 F.3d 430, 436 (D.C. Cir. 2015).

[9] In *United States v. Kwai Fun Wong,* the Supreme Court recently held that that statute of limitations with respect to the Federal Tort Claims Act in 28 U.S.C. § 2401(b) was not jurisdictional because Congress had "provided no clear statement indicating that § 2401(b) is the rare statute of limitations that can deprive a court of jurisdiction." 135 S. Ct. 1625, 1632 (2015); *see also Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015); *U.S. ex rel. Heath v. AT & T, Inc.,* 791 F.3d 112, 119 (D.C. Cir. 2015). Nonetheless, because the D.C. Circuit Court of Appeals has explicitly held that section 2401(a) is jurisdictional, *see Spannaus,* 824 F.2d at 52, and because the Supreme Court's holding in *Wong* is limited to the section 2401(b), Circuit precedent remains binding on this Court. It is for the Court of Appeals to determine in the first instance what effect, if any, *Wong* has on its holding that section 2401(a) is jurisdictional. *See Dugdale v. U.S. Customs & Border Prot.,* No. 14–CV–01175 (CRC), 2015 WL 2124937, at *1 (D.D.C. May 6, 2015). However, even if the applicable statute of limitations were not jurisdictional, the Court would conclude that there is no basis for equitable tolling in these circumstances.

neither waiver nor equitable tolling is applicable. *See Bigwood v. Def. Intelligence Agency,* 770 F. Supp. 2d 315, 319 (D.D.C. 2011) (citing *W. Virginia Highlands Conservancy v. Johnson,* 540 F. Supp. 2d 125, 138 (D.D.C. 2008)); *see also United States v. Kwai Fun Wong,* 135 S. Ct. 1625, 1631 (2015). However, even if the statute of limitations were not jurisdictional, the Court would conclude that there is no basis for equitable tolling in this case.

"A cause of action against an administrative agency 'first accrues,' within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." *Spannaus*, 824 F.2d at 56. In a letter dated October 26, 2004, the GAO denied Plaintiff's request to add his husband to his health insurance coverage. Compl. ¶ 26. Plaintiff's request for reconsideration was then denied through a letter issued on January 11, 2005. *Id.* ¶ 30. That letter stated that it constituted a final agency decision under 5 C.F.R. § 890.104(e), which governs the Federal Employee Health Benefits program. *Id.* The date of that final agency decision is the relevant date for the purpose of applying the statute of limitations because Plaintiff could have brought an action under the Federal Employee Health Benefits Act at that time. *See Spannaus*, 824 F.2d at 56. Accordingly, the six-year statute of limitations had expired by February 11, 2015, when Plaintiff filed this action, and any claims under the Act are barred by the statute of limitations.

In response, Plaintiff first argues that the relevant date—the date of the final agency action being challenged—is September 13, 2006, when the agency denied his discrimination complaint pertaining to the denial of health coverage. *See* Compl. ¶ 26; Pl's Opp'n at 10 ("Plaintiff asserts that September 13, 2006 should be interpreted as the date of final agency action in this discrimination matter."). The Court disagrees. Insofar as Plaintiff seeks a remedy under the Federal Employee Health Benefits Act, the relevant date is the denial of coverage

itself, not the denial of a discrimination claim pertaining to the denial of coverage. In any event, even if September 13, 2006, were the relevant date, it would lead to the same result: the complaint was filed on February 11, 2015, more than eight years after the agency's denial of his discrimination complaint in September 2006, and any claims under the Act would still be barred by the statute of limitations.[10]

Insofar as Plaintiff seeks to rely on the "continuing violations" doctrine—on the basis that Plaintiff continued to receive health coverage for himself *alone* until the Supreme Court decided *United States v. Windsor* in June 2013—the Court concludes that the continuing violations doctrine is not applicable. "[A] continuing violation 'is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality.' " *Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012) (quoting *Taylor v. FDIC,* 132 F.3d 753, 765 (D.C. Cir. 1997)). Here, Plaintiff was certainly aware of the putative violation—the denial of his benefits—and even took actions to pursue an administrative discrimination claim regarding the denial of benefits. "[N]o 'cumulative effect'

---

[10] In Plaintiff's Opposition, for the first time, he states that he sent a request to GAO officials on February 28, 2012, which included the form that he had originally submitted in 2004 request to change his coverage to "Self Plus Family." Pl.'s Opp'n at 10-11. Through that communication, Plaintiff requested coverage beginning March 11, 2012, in light of the district court decision in *Golinski v. Office of Personnel Management*, 824 F. Supp. 2d 968 (N.D. Cal. 2012) (declaring the Defense of Marriage Act unconstitutional and allowing benefits for a spouse of the same gender on FEHB program). However, Plaintiff never reports the result of that request. Nor does Plaintiff ever distinguish between the periods before the 2012 request and after that request for the purposes of that action. Plaintiff never claims that the 2012 request is the relevant date for the purposes of the statute of limitations and, indeed, concedes that the relevant date is no later than September 13, 2006. *See* Pl.'s Opp'n at 10. The Court concludes that the 2012 request cannot be the basis for computing the statute of limitations.

was necessary to reveal its supposed illegality." *Id.* at 330. Moreover, as the D.C. Circuit Court

of Appeals has stated, " '[a] lingering effect of an unlawful act is not itself an unlawful act.' "

*Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007). Accordingly, the continuing

violations doctrine is inapplicable to Plaintiff's claim—regardless of whether the statute of

limitations is jurisdictional or not.

Finally, the Court agrees with Defendants that the decisions of the Supreme Court in

*United States v. Windsor* and, subsequently, in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), do

not revive Plaintiff's time-barred claim under the Federal Employee Health Benefits Act. *See*

*James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 541 (1991) ("[O]nce suit is barred by res

judicata or by statutes of limitation or repose, a new rule cannot reopen the door already

closed."). Because the statute of limitations in section 2401(a) is jurisdictional, equitable tolling

is unavailable. *See Bigwood*, 770 F. Supp. 2d at 319; *see also Wong*, 135 S. Ct. at 1631.

Moreover, even if equitable tolling were available, Plaintiff's failure to bring suit within the six-

year statute of limitations because of his assessment that the odds of success in court were

minimal would not be "extraordinary circumstances" sufficient to justify equitable tolling. *See*

*Menominee Indian Tribe of Wisconsin v. United States*, 764 F.3d 51, 62 (D.C. Cir. 2014) *cert.*

*granted in part*, 135 S. Ct. 2927 (2015). Nor has Plaintiff suggested any other basis to warrant

equitable tolling in these circumstances.

For all of these reasons, the Court concludes that any claims under the Federal Employee

Health Benefits Act are barred by the six-year statute of limitations in section 2401(a), whether

or not that statute of limitations is jurisdictional. Accordingly, the Court need not consider

Defendant's alternative argument that Plaintiff's damages claim under the Act is barred because

damages are unavailable under the applicable waiver of sovereign immunity. The Court next turns to Plaintiff's discrimination claims.

## B.  Discrimination Claim Under the Constitution

As stated above, it is unclear from Plaintiff's pleadings whether Plaintiff intends to bring a claim for discrimination under the Constitution—in addition to bringing a discrimination claim under Title VII. Assuming Plaintiff's Amended Complaint does purport to bring such a claim, any such claim fails. First, any such claim would be barred by the six-year statute of limitations in section 2401(a). Section 2401(a) is applicable to Constitutional claims just as it was to claims under the Federal Employee Health Benefit Act, discussed above. *See Neighbors of Casino San Pablo v. Salazar*, 442 F. App'x 579, 580 (D.C. Cir. 2011) (applying section 2401(a) to Constitutional claims); *see also Kendall v. Army Bd. for Correction of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993) (section 2401(a) "bar applies to all civil actions whether legal, equitable, or mixed). Therefore, for all of the reasons stated above with respect to Plaintiff's claims under the Federal Employee Health Benefit Act, any Constitutional discrimination claim brought by Plaintiff is similarly barred by the six-year statute of limitations.

Second, insofar as Plaintiff seeks monetary damages through a putative Constitutional discrimination claim, that claim is barred "because the United States has not waived sovereign immunity with respect to actions for damages based on violations of constitutional rights by federal officials, whether brought against the United States directly, or against officers sued in their official capacities." *Hamrick v. Brusseau*, 80 F. App'x 116 (D.C. Cir. 2003) (citations omitted). While Plaintiff argues that the government has waived sovereign immunity through the right-to-sue letter issued by the GAO, *see* Pl.'s Opp'n at 13 (citing Compl., Ex.), that argument is unavailing because only Congress can waive the Federal government's sovereign immunity. *See*

*Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.") (citations omitted). In any event, the right-to-sue notice plainly only pertains to Plaintiff's right to sue pursuant to Title VII of the Civil Rights Act of 1964—a right to sue itself established by Congress, not by the agency. *See* Compl., Exhibit at 2.

Third, and finally, insofar as Plaintiff brings claims for injunctive relief through his Amended Complaint, those claims are moot because his husband has been enrolled in his FEHB plan since the issuance of *United States v. Windsor* in 2013.

In sum, any discrimination claims that Plaintiff purportedly brings under the Constitution itself are barred by the statute of limitations, claims for monetary damages are barred by sovereign immunity, and claims for injunctive relief are moot. The Court now turns to Plaintiff's discrimination claims under Title VII.

## C.  Discrimination Claim Under Title VII

With respect to Plaintiff's discrimination claims under Title VII, Defendants argue that the claims must be dismissed because Plaintiff failed to timely exhaust his administrative remedies prior to filing suit. The Court agrees with Defendants that Plaintiff has failed to exhaust his administrative remedies and that this case must be dismissed on that ground. Therefore, the Court need not consider Defendants' alternative argument that the Amended Complaint fails to state a claim because Plaintiff has not alleged that Defendants intentionally discriminated against him.

As explained above, Plaintiff initially filed a formal discrimination complaint with GAO's Office of Opportunity and Inclusiveness, after mandatory informal counseling, on March 11, 2005. Compl. ¶ 39. On September 13, 2006, the GAO denied his Complaint. *Id.* ¶ 45.

Plaintiff initially decided to appeal the decision to the PAB—the route for pursuing an administrative appeal of the GAO's denial of a discrimination complaint—but later abandoned that appeal. *Id.* ¶ 47. Plaintiff never filed suit in Federal district court until filing this action on February 11, 2015. After the issuance of *United States v. Windsor*, Plaintiff filed a second discrimination complaint with the GAO's Office of Opportunity and Inclusiveness—on January 2, 2014—claiming discrimination on the basis of sex for the denial of FEHB coverage for his husband prior to 2013. *Id.* ¶ 71. On November 12, 2014, GAO issued a one-page letter dismissing that complaint for failure to state a claim. *Id.* ¶ 73; *see also id.*, Exhibit (Letter from Reginald Jones).

Title VII requires that a Plaintiff alleging employment discrimination exhaust administrative remedies before filing an action in Federal district court.[11] *Payne*, 619 F.3d at 59. Like the regulations applicable to other Federal employees, "GAO Order 2713.2 requires an aggrieved employee to consult informally with a counselor within forty-five days of the allegedly discriminatory action." *Chennareddy*, 698 F. Supp. 2d at 11. As explained above, if informal consultation is unsuccessful, an employee may file a discrimination complaint with the agency and may then seek judicial review if the agency denies the complaint. Although Plaintiff filed this action within 90 days of the November 12, 2014, denial of his second discrimination

---

[11] The Court notes that it does not appear that Plaintiff relies on the 2006 denial of his discrimination complaint as the basis for having exhausted administrative remedies. He attached the 2014 denial—and only that denial—to his Amended Complaint and never suggested that the 2006 denial could be the basis of timely exhaustion of his discrimination claim. *See* Pl.'s Opp'n at 13; Compl., Exhibit. In any event, Plaintiff never filed an action in district court until February 11, 2015. Plaintiff must file an action in district court within 90 days of receiving a final decision from the agency. *See* 42 U.S.C. § 2000e-16(c); 31 U.S.C. § 732(f)(2); *see also* GAO Order 2713.2 at ch. 6, ¶ 2. But more than 8 years elapsed between the 2006 denial and the filing of this action. Therefore, even if Plaintiff sought to rely on the resolution of his earlier discrimination complaint, the Court would conclude that Plaintiff did not timely exhaust his administrative remedies on that basis.

complaint, Defendants argue that Plaintiff failed to exhaust his administrative remedies because no discriminatory act occurred within 45 days of his 2013 contact with the GAO's Office of Opportunity and Inclusiveness—the contact that is the basis for the agency's denial of the relevant discrimination complaint. The Court agrees.

Before analyzing whether Plaintiff has timely exhausted his administrative remedies, including the statute of limitations for exhausting such remedies, the Court first considers whether Defendants have waived reliance on the statute of limitations.[12] In *Doak v. Johnson*, the D.C. Circuit Court of Appeals recently confirmed that a deadline analogous to the GAO's 45-day requirement was not jurisdictional. 798 F.3d 1096, 1103-04 (D.C. Cir. 2015) (holding the regulations of the Equal Employment Opportunity Commission establishing administrative time limits for discrimination claims were not jurisdictional). So, too, therefore, the 45-day deadline established by the GAO for making contact with the Office of Opportunity and Inclusiveness " 'function[s] like statutes of limitations,' and thus "[is] subject to equitable tolling, estoppel, and waiver." *Id.* at 1104 (quoting *Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997)).

In *Doak*, the Court of Appeals considered a case where an agency had "never raised the 45-day time limit during the administrative proceedings." *Id.* Here, too, the agency did not raise the 45-day time limit in the 2013 administrative proceedings. However, the GAO's treatment of Plaintiff's 2013 discrimination complaint was materially different from the agency's actions in *Doak*. In *Doak*, the agency " 'not only accept[ed] and investigate[d] [Doak's] complaint, but also decide[d] it on the merits—all without mentioning timeliness[.]" *Id.* (citing *Bowden,* 106 F.3d at 438) (alterations in original). In this case, GAO acknowledged receipt of the complaint, but

---

[12] Plaintiff has not argued that Defendants have waived the statute of limitations. However, because Plaintiff is representing himself *pro se*, the Court nonetheless considers whether the statute of limitations has been waived.

never conducted any investigation of the complaint. *See* Compl. ¶ 74-76. The agency dismissed the complaint for failure to state a claim in a one-page decision. *See* Compl., Exhibit. The one-page decision simply explained that the regulations issued after *United States v. Windsor* did not allow compensation for benefits before June 26, 2013, when *Windsor* was issued. *Id.* The agency's resolution of Plaintiff's 2013 complaint is strikingly different from that of his 2005 complaint, in which "the decision letter reflected the level of comprehensive review conducted and documented in the contract investigator's [Report of Investigation]."[13] *Id.* ¶ 45. Accordingly, the Court concludes that, unlike in *Doak*, the GAO has not waived the statute of limitations and has a "legitimate reason to complain about a judicial decision on the merits." *Doak*, 798 F.3d at 1104. The Court, therefore, proceeds to determine whether Plaintiff has complied with the applicable statute of limitations.

The allegedly discriminatory action—the denial of Plaintiff's request to add his husband to his FEHB plan—occurred no later than January 11, 2005: his request was denied on October 26, 2004, Compl. ¶ 26, and his request for reconsideration was denied on January 11, 2005, *id.* ¶ 30. While Plaintiff did establish initial contact with the Office of Opportunity and Inclusiveness within 45 days of those denials, Plaintiff did not seek judicial review of the denial of the claim based on that contact, and the 2006 contact with the Office of Opportunity and Inclusiveness is not the basis for the current suit. *See* Compl., Exhibit (attaching only denial of 2013 discrimination complaint). As explained above, the current suit is based on his commencement of the administrative process for considering a discrimination claim in 2013. A period of more than

---

[13] The Court notes that the 2006 letter denying Plaintiff's original discrimination complaint, which Defendants have attached to their Motion to Dismiss, is a seven-page decision thoroughly reviewing the facts of the case and explaining the agency's reasons for denying Plaintiff's claim on the merits. *See* Def.'s Mot., Ex B.

eight years—far more than 45 days—elapsed between the January 11, 2005, denial of reconsideration regarding Plaintiff's request to add his husband to his FEHB plan and his contact with the equal employment specialist in the Office of Opportunity and Inclusiveness in 2013. On its face, Plaintiff's complaint does not comply with the applicable statute of limitations for exhausting administrative remedies before filing a Title VII action.

Moreover, for the reasons explained above with respect to Plaintiff's Federal Employee Health Benefits Act claim, the Court concludes that the "continuing violations" doctrine is inapplicable to Plaintiff's Title VII claim. While "Self Only" coverage—with the corresponding deductions from his paycheck—was provided to Plaintiff throughout the period after the denial of benefits until 2013, the only allegedly discriminatory act is the *initial* denial of benefits in 2004. Plaintiff never sought to add his husband to his health coverage after the initial denial until his 2013 request in the aftermath of *United States v. Windsor*, which was then granted. Because the coverage and the associated paycheck deductions subsequent to the denial of his 2004 request were the " 'delayed, but inevitable, consequence[s]' " of the initial denial, they do not constitute discriminatory actions that can serve as the basis for a Title VII claim. *Kaufman v. Perez*, 745 F.3d 521, 529 (D.C. Cir. 2014) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 257–58 (1980)).

Similarly, the issuance of *United States v. Windsor* in 2013 does not provide a basis for equitably tolling the statute of limitations. Plaintiff was aware of the allegedly discriminatory act in 2004, and even pursued a discrimination claim before the agency at that time. His failure to pursue that claim in Federal court in a timely fashion cannot be justified because of his assessment that the law was not favorable to his claim at that time. *See Commc'ns Vending Corp. of Arizona v. F.C.C.*, 365 F.3d 1064, 1075 (D.C. Cir. 2004) ("The application of the statute of limitations cannot be made to depend upon the constantly shifting state of the law, and a suitor

cannot toll or suspend the running of the statute by relying upon the uncertainties of controlling law.") (citation omitted). Nor is there any other basis for equitably tolling the statute of limitations for the period between 2005—when the agency denied Plaintiff's request—and 2013—when Plaintiff began the process of filing the administrative complaint that is the basis of this action.[14] In sum, Plaintiff has failed to timely exhaust his administrative remedies, and Court dismisses the Title VII claim on that basis.

As stated above, because the Court dismisses Plaintiff's Title VII claim for failure to exhaust administrative remedies, the Court need not resolve Defendants' alternative argument that the Amended Complaint fails to state a claim because Plaintiff has not alleged that Defendants intentionally discriminated against him. The Court does note that it appears that Plaintiff claims that, while the agency stated that it had no flexibility to grant Plaintiff's benefits request, it had exercised flexibility regarding benefits in other circumstances. That, it appears, is the gravamen of Plaintiff's discrimination claim. However, because Plaintiff did not timely exhaust administrative remedies, the Court dismisses this action and does not reach the substance of that claim.

*     *     *

In sum, the Court dismisses each of the claims in this action because of the timing of Plaintiff's attempt to pursue his rights in Federal court: although the deadlines applicable to the several putative claims are not the same, essentially Plaintiff filed each too late. It is as a result of this timing that the Court does not reach merits of the underlying claims, and none of the cases to which Plaintiff refers require a contrary result. Specifically, Plaintiff several times references the

---

[14] While Defendants argue that the Lilly Ledbetter Fair Pay Act is inapplicable to the circumstances of this case, the Court need not consider that argument because Plaintiff never relies on that act in arguing that the complaint complies with the statute of limitations.

decision in *Golinski v. Office of Personnel Management*, 824 F. Supp. 2d 968 (N.D. Cal. 2012), *appeal dismissed* 724 F.3d 1048 (Mem) (9th Cir. 2013). In *Golinski*, in the context of a dispute over health insurance coverage under the FEHB program, a district judge for the Northern District of California declared the Defense of Marriage Act to be unconstitutional on February 22, 2012, and enjoined the Office of Personnel Management "from interfering with the enrollment of Ms. Golinski's wife in her family health benefits plan." *Id.* at 1003. Plaintiff also repeatedly references *Windsor*, in which the Supreme Court declared the Defense of Marriage Act unconstitutional, 133 S. Ct. at 2696, and *Obergefell*, in which the Supreme Court concluded that laws barring same-sex couples from marrying violated the Constitution, 135 S. Ct. at 2609. However, none of the plaintiffs in those cases faced the procedural barriers that bar Plaintiff from receiving the relief that he now seeks. Moreover, there is no suggestion by the Supreme Court in *Windsor* or *Obergefell* that those decisions revived claims that otherwise do not satisfy the applicable statute of limitations, or created exceptions to the applicable timelines set by Congress and the relevant agencies, or allowed for the type of retroactive compensation that Plaintiff now seeks. *See generally Windsor*, 133 S. Ct. at 2682-96; *Obergefell*, 135 S. Ct. at 2594-2608. In this case, the relevant time limits for filing a claims pursuant to the Federal Employee Health Benefits Act and pursuant to Title VII, as well as a discrimination claim pursuant to the Constitution itself, bar Plaintiff from seeking redress in this Court at this time, as explained above. Once again, this does not mean that no harm occurred; it only means that the Court is not, at this time, the arena to address any such harm.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' [10] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Court concludes that insofar as Plaintiff

brings a claim under the Federal Employee Health Benefits Act, it is barred by the applicable

statute of limitations, as is any discrimination claim brought under the Constitution. The Court

also concludes that Plaintiff's discrimination claims under Title VII fail because Plaintiff has

failed to timely exhaust his administrative remedies. As the Court discerns no other basis for

Plaintiff's claims, this case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Dated: November 24, 2015

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
